ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

DEC 1 4 2005

at 2 o'clock and 34 min P M
SUE BEITIA, CLERK

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BRIAN K. NAKASHIMA, | ) | Civ. No. 04-00337 ACK/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PRUDENTIAL EQUITY GROUP, L.L.C., | ) | |
| f.k.a. PRUDENTIAL SECURITIES, | ) | |
| INC.; PRUDENTIAL FINANCIAL, | ) | |
| INC.; WACHOVIA SECURITIES, | ) | |
| L.L.C.; JOHN DOES 1-50; JANE | ) | |
| DOES 1-50; DOE ENTITIES 1-50, | ) | |
| | ) | |
| Defendants. | | |

---

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### BACKGROUND

Brian K. Nakashima ("Plaintiff") began working at Prudential in 1981 as a Financial Advisor.[1]  See Pl. Concise St. ¶ 1; Def. Concise St. at ¶ 1.  Plaintiff was promoted to Branch Manager in 1994.  See Pl. Concise St. ¶ 1; Def. Concise St. at ¶ 1.  Plaintiff alleges that he "was the only Asian American Branch Manager with Prudential and one of very few Branch Managers who was not a white male."  See Pl. Concise St. ¶ 9.

---

[1] According to Defendants, Plaintiff worked for Prudential Securities, Inc., which was subsequently known as Prudential Equity Group, L.L.C.  See Def. Concise St. at 2.  Prudential Financial, Inc. was the parent company of Prudential Securities, Inc.  See Def. Concise St. at ¶ 3.

According to Plaintiff's deposition testimony, while he was Branch Manager, he repeatedly signed log entries indicating that he conducted supervisory visits to the Hilo office, even though he did not actually visit the Hilo office. See Def. Concise St. at ¶¶ 7-8; Depo. of Brian Nakashima ("Nakashima Depo.") at 122-123; see also Pl. Concise St. ¶ 16. Plaintiff stepped down from the position of Branch Manager and resumed the position of Financial Advisor in mid to late 2002. See Pl. Concise St. ¶ 8; Def. Concise St. at ¶ 2. Facing what he alleges was a "threat of imminent termination," Plaintiff submitted his resignation from employment on June 4, 2003. See Pl. Concise St. ¶ 30; Def. Concise St. at ¶¶ 15-17.

On May 25, 2004, a First Amended Complaint ("Complaint") filed by Plaintiff in Hawaii State court was removed to this Court. The Complaint alleges that Plaintiff's former employer, Prudential Equity Group, L.L.C., Prudential Securities, L.L.C., Prudential Financial, Inc., Wachovia Securities, L.L.C. (collectively "Defendants" or "Prudential") discriminated against Plaintiff in his employment, on the basis of Plaintiff's race and age. The Complaint contains the following four counts: (1) race and age discrimination in violation of Hawaii Revised Statute ("H.R.S.") §378-2; (2) breach of contract; (3) promissory estoppel; and (4) unpaid wages in violation of H.R.S. §§ 388-10 and 388-11.

On September 19, 2005, Defendants filed a Motion for Summary Judgment and concise statement. On November 23, 2005, Plaintiff filed an Opposition and concise statement. On December 1, 2005, Defendants filed a Reply. On December 12, 2005, the Court held a hearing on the Motion for Summary Judgment. In response to a request made by the Court during the hearing, Defendants filed a Supplemental Submission on December 12, 2005.

## **STANDARD**

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[2/]  Fed. R. Civ. P. 56(c).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A genuine issue of material fact arises if 'the evidence is such

---

[2/] Affidavits made on personal knowledge and setting forth facts as would be admissible at trial are evidence that a court may consider when determining whether a material issue of fact exists. Fed. R. Civ. P. 56(e). Legal memoranda and oral argument are not evidence and do not create issues of fact. <u>See</u> <u>British Airways Bd. v. Boeing Co.</u>, 585 F.2d 946, 952 (9th Cir. 1978).

that a reasonable jury could return a verdict for the nonmoving party.'"[3/] Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 310 F.3d 1188, 1194 (9th Cir. 2002) (quoting Union Sch. Dist. v. Smith, 15 F.3d 1519, 1523 (9th Cir. 1994)) (internal citations omitted). Conversely, where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the Court as to the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party may do so with affirmative evidence or by "'showing'--that is pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Id. at 325. All evidence and reasonable inferences drawn therefrom are considered in the light most favorable to the nonmoving party. See, e.g., T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). So, too, the Court's role is not to make credibility assessments. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. Id. at

---

[3/] Disputes as to immaterial issues of fact do "not preclude summary judgment." Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1478 (9th Cir. 1986).

250-51.

Once the moving party satisfies its burden, however, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. See Celotex, 477 U.S. 322-23; Matsushita Elec., 475 U.S. at 586; Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv., 809 F.2d at 630. The nonmoving party must instead set forth "significant probative evidence" in support. T.W. Elec. Serv., 809 F.2d at 630. Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.[4/]  See Celotex, 477 U.S. at 322.

_____

[4/] When the moving party also has the burden of proof in an element of a claim, it has the "burden of establishing a prima facie case on the motion for summary judgment." UA Local 343 of the United Ass'n of Journeymen v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995).  Upon showing a prima facie case, the burden of production shifts and it becomes "incumbent on [the nonmoving party] to 'set forth specific facts showing that there is a genuine issue for trial,' by evidence cognizable under that rule." Id. (quoting Fed. R. Civ. P. 56(e)); Charles Alan Wright et al., Federal Practice & Procedure § 2727 (3d ed. 1998).  The ultimate burden of persuasion as to the non-existence of any genuine issues of material fact remains on the moving party. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102

**DISCUSSION**

I.    **H.R.S. § 378-2 Claim for Racially Discriminatory Termination**

Plaintiff alleges that he was constructively terminated from employment because of his Asian-American race, in violation of H.R.S. § 378-2.  See Complaint at 7.  H.R.S. § 378-2 states, in pertinent part:

> It shall be an unlawful discriminatory practice:
> (1) Because of race, sex, sexual orientation, age, religion, color, ancestry, disability, marital status, or arrest and court record:
> (A) For any employer . . . to discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment . . . .

H.R.S. § 378-2(1).

The Supreme Court of Hawaii has adopted the McDonnell Douglas burden-shifting framework, used by federal courts in the context of Title VII and the Age Discrimination in Employment Act ("ADEA"), to analyze discrimination claims under H.R.S. § 378-2. See Shoppe v. Gucci America, Inc., 14 P.3d 1049, 1058-1060, 94 Haw. 368, 377-379 (Haw. 2000); Furukawa v. Honolulu Zoological Society, 936 P.2d 643, 648, 85 Haw. 7, 12 (Haw. 1997); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

The framework involves three steps.  Shoppe, 94 Haw. at 378.  First, "the plaintiff must establish a prima facie case of discrimination by demonstrating, by a preponderance of evidence,

_____

(9th Cir. 2000); accord Dye v. United States, 121 F.3d 1399, 1409 (10th Cir. 1997).

the following four elements: (1) that plaintiff is a member of a protected class; (2) that plaintiff is qualified for the position for which plaintiff has applied or from which plaintiff has been discharged; (3) that plaintiff has suffered some adverse employment action, such as a discharge; and (4) that the position still exists." Shoppe, 94 Haw. at 378.  Second, once the plaintiff establishes a prima facie case of discrimination, "the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Id.  The employer's explanation must be in the form of admissible evidence and must clearly set forth reasons that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the challenged employment action. Id.  Third, if the employer rebuts the prima facie case, the burden of production "reverts to the plaintiff to demonstrate that the defendant's proffered reasons were 'pretextual.'" Id., 94 Haw. at 379 (quoting McDonnell Douglas, 411 U.S. at 804).  The ultimate burden of persuasion remains with the plaintiff at all times.  Shoppe, 94 Haw. at 378-379; Furukawa, 85 Haw. at 12-13.

In the instant case, Defendants dispute that Plaintiff has established a prima facie case of racial discrimination.  See Motion at 16-21.  Defendants alternatively argue that even if Plaintiff has established a prima facie case, Plaintiff has

failed to rebut Defendants' articulated legitimate,
nondiscriminatory reason with evidence of pretext.  See Motion at
22-25.

**A.    Prima Facie Case**

For purposes of the motion for summary judgment,
Defendants do not dispute that Plaintiff has demonstrated three
of the four elements of a prima facie case of racial
discrimination: that Plaintiff is a member of a protected class,
that he was qualified for the position from which he was
allegedly discharged, and that his prior position still exists.
See Motion at 16-22.  Rather, Defendants argue that Plaintiff has
not established the third element: that Plaintiff did not suffer
an adverse employment action because he voluntarily resigned and
was not terminated from employment.  See Motion at 16.  Plaintiff
contends that he suffered from an adverse employment action
because he was constructively discharged on June 4, 2005, when he
submitted his resignation.  See Opposition at 17.

Constructive discharge occurs when "working conditions
deteriorate, as a result of discrimination, to the point that
they become 'sufficiently extraordinary and egregious to overcome
the normal motivation of a competent, diligent, and reasonable
employee to remain on the job to earn a livelihood and to serve
his or her employer." Brooks v. City of San Mateo, 229 F.3d 917,
930 (9th Cir. 2000) (analyzing constructive discharge theory

8

under Title VII) (quoting <u>Turner v. Anheuser-Busch, Inc.</u>, 7 Cal.4th 1238 (1994) (criticized on other grounds by <u>Romano v. Rockwell Int'l, Inc.</u>, 14 Cal. 4th 479 (1996)); citing <u>Watson v. Nationwide Ins., Co.</u>, 823 F.2d 360 (9th Cir. 1987); citing EEOC, Policy Guidance on Sexual Harassment, 8 BNA FEP Manual 405:6681 (Mar. 19, 1990)). <u>See also</u> <u>Pennsylvania State Police v. Suders</u>, 542 U.S. 129 (2004) (finding that Title VII encompasses constructive discharge claims; constructive discharge resulting from sexual harassment or hostile work environment is one subset of these claims, in which Plaintiff must prove "working conditions so intolerable that a reasonable person would have felt compelled to resign").[5/]  In other words, constructive discharge can occur when the working "conditions [become] so intolerable that a reasonable person would leave the job." <u>Brooks</u>, 229 F.3d at 930-931.  In such cases, "the individual has simply had enough; she can't take it anymore." <u>Draper v. Coeur Rochester, Inc.</u>, 147 F.3d 1104, 1110 (9th Cir. 1998) (analyzing constructive discharge theory under Title VII).

To overcome a motion for summary judgment on this issue, Plaintiff "must show there are triable issues of fact as to whether 'a reasonable person in [his] position would have felt that [he] was forced to quit because of intolerable and

---

[5/] In analyzing discrimination claims brought pursuant to state law, Hawaii courts look to federal case law for guidance. <u>See</u> <u>Shoppe</u>, 94 Haw. 368, 377.

discriminatory working conditions.'" Schnidrig v. Columbia
Machine, Inc., 80 F.3d 1406, 1411 (9th Cir. 1996) (analyzing
constructive discharge theory under the ADEA).

The evidence submitted by Plaintiff on this issue is
materially undisputed.  When Plaintiff was Branch Manager, he
understood that he was required to visit the Hilo office
periodically and record those visits on a visitation log.  See
Nakashima Depo. at 116; see also Pl. Concise St. at ¶ 12.
Plaintiff did not visit the Hilo office as often as was required,
but nonetheless he made entries in the visitation log indicating
that he visited the Hilo office on dates when he did not actually
visit the Hilo office.  See Nakashima Depo. at 118-123.
Plaintiff stepped down as Branch Manager in 2002 and resumed the
position of Financial Advisor because Plaintiff felt there were
no opportunities for advancement, due in part to his race, and
because Plaintiff felt that Prudential was going to sell the
entity for which he worked to another firm.  See Nakashima Depo.
at 79-80, 86; see also Pl. Concise St. at ¶ 8.[6]

---

[6] Plaintiff has submitted evidence that he stepped down as
Branch Manager in the summer of 2002.  See Nakashima Depo. at 79-
80.  Defendants allege that Plaintiff stepped down in December
2002.  See Def. Concise St. at ¶ 2.  For purposes of this
constructive discharge analysis, the Court will assume Plaintiff
stepped down in the summer of 2002.  Plaintiff does not allege
that the act of stepping down as Branch Manager was an adverse
employment action or constituted a constructive discharge.  See
generally Opposition at 17-19.

In December 2002, an employee in the Hilo office
complained about the infrequency of Plaintiff's visits to the
Hilo office.  See Pl. Concise St. at ¶ 18.  As a result of that
complaint, Defendants investigated the entries on the visitation
log and, as part of that investigation, interviewed Plaintiff via
telephone in January 2003 and in person in February 2003.  See
Pl. Concise St. at ¶¶ 21, 25.  In January 2003, Plaintiff was
told by a Regional Officer that the officer was working to put
the log issue behind them; in February 2003, Plaintiff was told
by a Divisional Officer "Don't worry about it; we need to take
care of good managers like you."  See Pl. Concise St. at ¶¶ 24,
26.

On or about June 3 or 4, 2003, the Branch Manager
informed Plaintiff that the Regional Officer would be traveling
to Honolulu to fire Plaintiff at an unspecified time.  See Pl.
Concise St. at ¶ 29; Nakashima Depo. at 170.  Plaintiff decided
to submit his letter of resignation on June 4, 2003 for "honor,"
so that he "would not actually be terminated."  See Nakashima
Depo. at 170-171 ("Q. So you decided to submit your letter of
resignation so that you would not actually be terminated.  Is
that correct?  A. Yes.  Q. Why?  A. Honor, I don't know.").  When
asked whether race played a factor in any termination decision
that may have been reached, Plaintiff responded "I don't know on
the termination."  See Nakashima Depo. at 182.  Plaintiff alleges

that this resignation was a constructive termination by Defendants. See Opposition at 18-19.

Accepting all of Plaintiff's factual allegations and supporting evidence as true and taking them in the light most favorable to Plaintiff, his working conditions were not so intolerable and discriminatory that a reasonable person in his position would feel forced to resign. See Brooks, 229 F.3d at 930; Schnidrig, 80 F.3d at 1412. Plaintiff points to no discriminatory actions or remarks by Defendants and, in fact, even admits that he does not know whether discrimination played any role in any decision to terminate him. See Nakashima Depo. at 182. There is simply no evidence that Plaintiff's working conditions became egregious or intolerable as a result of discrimination. See Schnidrig, 80 F.3d at 1412.

A constructive discharge usually results from a series of discriminatory actions on the part of the employer. See Draper, 147 F.3d at 1110. Plaintiff has submitted no evidence of any discriminatory action here, let alone a series of discriminatory actions. Plaintiff was not demoted, disciplined, or encouraged to resign and he never made any complaints about any discrimination that he may have perceived. See Schnidrig, 80 F.3d at 1412 (in finding conditions were not intolerable and did not create constructive discharge, noting that employee was not demoted, did not receive a cut in pay, was not encouraged to

12

resign or retire, and was not disciplined).  Here, Plaintiff has admitted that he chose to resign rather than face termination for his own misconduct.  In fact, he admitted that the threat of discharge could not have created intolerable working conditions until the day before he resigned because, until then, he did not think it was possible that he would be terminated by Prudential. See Nakashima Depo. at 164 ("Q. You thought it was possible you could lose your job as a result of [the log issue]?  A. Actually, initially no.") and 170 ("Q. At some point you came to believe that you were going to be fired?  A. The day before I resigned. That's when I found out."); see also id. at 112-113 (describing the resignation as "so sudden").[7/]

The Ninth Circuit Court of Appeals has indicated that, in determining whether constructive discharge occurred, a court should consider an employer's nondiscriminatory reasons for its actions because working conditions that become intolerable as a result of factors other than discrimination, such as the employee's own misconduct, cannot lead to constructive discharge for purposes of a claim under Title VII or the ADEA.  See Hardage

---

[7/] Apparently, Plaintiff did not believe a rumor that was allegedly spread by a human resources employee, who allegedly told other managers as early as January of 2003 that Plaintiff was going to be terminated.  See Nakashima Depo. at 277. Assuming that the rumor was spread, it is not enough to create an issue of fact as to whether Plaintiff faced intolerable working conditions.  The rumor is not enough to create an intolerable environment (especially when Plaintiff did not even believe the rumor).

v. CBS Broadcasting Inc., 427 F.3d 1177, 1185 (9th Cir. 2005)
(finding that constructive discharge did not occur because
employer was motivated by nondiscriminatory reasons, namely
employee's insubordination and poor performance); Schnidrig, 80
F.3d at 1412.[8/]  Here, Plaintiff has admitted that he signed the
visitation log to indicate that he visited the Hilo office on
dates when he did not visit the Hilo office.  See Nakashima Depo.
at 122-123.  Even if this log was not an official company
document or was no longer required, and even if it was impossible
for Plaintiff to visit the Hilo office as required, Plaintiff has
still admitted that he lied to his employer (i.e., that he
falsified the log).  Plaintiff's misconduct creates a legitimate,
nondiscriminatory reason to investigate, discipline, and/or
decide to terminate Plaintiff, and to notify him of a decision to
terminate him in response to such misconduct.  Considering
Plaintiff's misconduct and the complete dearth of evidence of
discrimination, the Court finds that Prudential's actions did not
create an intolerable workplace as a result of discrimination.
See Hardage, 427 F.3d at 1185.

    The Court is unpersuaded by Plaintiff's argument that
facing a black mark of termination on one's permanent record is

---

    [8/] As discussed, in analyzing discrimination claims brought
pursuant to H.R.S. § 378-2, Hawaii courts look to federal case
law interpreting Title VII and the ADEA for guidance.  See
Shoppe, 94 Haw. 368, 377; Furukawa, 85 Haw. 7, 12.

enough by itself, with no evidence of discriminatory actions, to
create intolerable working conditions from which a reasonable
person would feel compelled to resign because of discrimination.
See Opposition at 18-19.  The cases cited by Plaintiff do not
require a different conclusion because those cases involve
different facts than those at issue here; here there is no
evidence of discrimination or of negative actions toward
Plaintiff.  See Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1186,
1188 (2d Cir. 1987) (abrogated on other grounds by Patterson v.
MacLean Credit Union, 491 U.S. 164 (1989)) (suggesting that
supervisor's threat of termination alone could establish
constructive discharge where supervisor previously directed
degrading and lewd obscenities toward plaintiff, gave plaintiff
poor performance reviews, and placed plaintiff on probation);
Grey v. City of Norwalk Board of Education, 304 F. Supp. 2d 314,
324 (D. Conn. 2004) (intolerable conditions resulted in
constructive discharge where circumstances included: repeated
threat that plaintiff's position would be eliminated, rumored
letter announcing her termination, public usurpation of
plaintiff's authority in front of her subordinates,
administration's manipulation of plaintiff's curricular
responsibilities, petty reprimands, and suggestion that her
contract should be bought back and she should consider herself
finished; noting that "sometimes" threats of termination alone

15

are sufficient to show constructive discharge); <u>Goodwin-Haulmark</u>
<u>v. Menninger Clinic, Inc.</u>, 76 F. Supp. 2d 1235, 1237-1239 (D.
Kan. 1999) (plaintiff raised genuine issue of material fact as to
whether she was constructively discharged under the ADEA and
other statutes where plaintiff submitted evidence of unsupportive
and undermining treatment by her supervisors, including being
pushed to quit and being informed that if she requested medical
leave she would be fired, even though plaintiff had provided
employer with a letter from her doctor stating that plaintiff was
unable to work due to a medical condition); <u>Baker v. Consolidated</u>
<u>Rail Corp.</u>, 835 F. Supp. 846, 852-854 (W.D. Pa. 1993) (citing
threats of discharge as one of many indicia of subtle coercion
that courts look for in considering constructive discharge
allegations, but finding plaintiff was not constructively
discharged where he alleged but provided no evidence that
employer made misrepresentations to plaintiff because of
plaintiff's age); <u>Gormley v. Coca Cola Enterprises</u>, 109 P.3d 280,
283 (N.M. 2005) (hypothetically citing an employer's threat of
being fired as an example of an adverse employment action that
would rise to the level of constructive discharge, but cautioning
that the "specific facts of the employment condition, and the
severity of its impact upon the employee, are pivotal in
determining whether the claim rises to the level of a
constructive discharge"); <u>Hinthorn v. Roland's of Bloomington,</u>

Inc., 503 N.E.2d 1128, 1130 (Ill. App. Ct. 1987) (allegation in
complaint that employee was forced to resign under express or
implied threat of discharge is sufficient to state a claim for
the tort of retaliatory discharge; retaliatory discharge claim
would only permit recovery if plaintiff proved that defendant
coerced her into resigning in retaliation for her request for
medical leave).

        For all of these reasons, the Court finds that
Plaintiff voluntarily resigned from employment and was not
constructively terminated.  Plaintiff has not raised a genuine
issue of fact to preclude this Court from finding on summary
judgment that he has not established a prima facie case of racial
discrimination under H.R.S. § 378-2.  Accordingly, Defendants are
entitled to summary judgment on the claim of racial
discrimination under H.R.S. § 378-2.

**B.    Pretext**

        Alternatively, even if Plaintiff has established a
prima facie case of racial discrimination, Defendants have
articulated a legitimate, nondiscriminatory reason for the
adverse employment action - Plaintiff's falsification of the Hilo
visitation log.  Thus, the burden of production reverts to
Plaintiff to demonstrate that Defendants' proffered reason is
pretextual.  Shoppe, 94 Haw. at 378-379.  To defeat summary
judgment, Plaintiff must offer direct or circumstantial evidence

of pretext; if Plaintiff only offers circumstantial evidence of pretext, it must be specific and substantial. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002). Plaintiff has made no such showing of pretext.

Plaintiff argues that the evidence demonstrates pretext for three reasons. First, Plaintiff argues that because he had voluntarily stepped down from the position of Branch Manager, his falsification of the visitation log and failure to make the required visits to the Hilo office while Branch Manager is not a legitimate reason for termination. See Opposition at 21. Plaintiff's argument is not supported by any evidence or by common sense - Plaintiff admitted that he was untruthful to his employer and provides no explanation for why that untruthfulness must be overlooked by the employer during Plaintiff's employment by the company, even if Plaintiff chose to step down to a lesser position.

Second, Plaintiff argues that because the visitation log was not identified as an "official Prudential document," Plaintiff's falsifications of the log are not misrepresentations. See Opposition at 21. This argument contradicts Plaintiff's own deposition testimony that when he became Branch Manager, he knew that visiting the Hilo office and documenting those visits on the log was a requirement of his job. See Nakashima Depo. at 116, 122-126. Even if the log was not an "official" Prudential

18

document as Plaintiff alleges, Plaintiff has admitted that he was required to visit the Hilo office and make a record of those visits, that he did not visit the Hilo office as often as was required by Prudential, and that he falsified records to indicate that he made the required visits. See Nakashima Depo. at 118-123. In other words, Plaintiff has admitted that he engaged in misconduct, irrespective of whether that misconduct was documented in an "official" company document.

Third, Plaintiff argues that similarly situated employees engaged in "far worse misconduct but were not disciplined." See Opposition at 21. However, Plaintiff has not provided evidence that similarly situated employees engaged in misconduct. To be similarly situated, employees must be subject to the same policies and subordinate to the same decision makers as Plaintiff. See Gonsalves v. Nissan, 100 Haw. 149, 161, 58 P.3d 1196, 1208 (Haw. 2002) (to prove sexual discrimination on the basis of differential treatment of similarly situated employees, plaintiff "must prove that all of the relevant aspects of his employment situation were similar to those employees with whom he seeks to compare his treatment") (citing Furukawa, 85 Haw. 7 (Haw. 1997)); Furukawa, 85 Haw. at 14. The other employees who Plaintiff alleges engaged in misconduct were not similarly situated to Plaintiff because they either did not work for Prudential at the time of their alleged misconduct or they

19

were not Branch Managers at the time of their alleged misconduct:
Mr. Van Scholten allegedly engaged in misconduct prior to his
employment with Prudential; other employees who were "complicit
in the alleged falsification of the visitation log" would have
been Plaintiff's subordinates, not other managers; Financial
Advisors who allegedly engaged in misconduct were not Branch
Managers when they engaged in that misconduct. See Pl. Concise
St. at ¶¶ 33-37.

Although he presents evidence that the previous Branch
Manager "probably" did not visit the Hilo office as frequently as
was required, Plaintiff presents no evidence (or allegation) that
the previous manager falsified the visitation log. See Depo. of
Tim Young at 27 (Exhibit 3 to Pl. Concise St.). Nor does he make
any allegation that the former Branch Manager was subordinate to
the same decision makers as Plaintiff, or that any of that prior
Branch Manager's supervisors ever became aware of any misconduct
by that Branch Manager. Nor does Plaintiff present any evidence
that the former Branch Manager was not disciplined for
misconduct.

Plaintiff has not demonstrated specific or substantial
evidence of pretext. Accordingly, the Court finds that
Defendants are entitled to summary judgment on the racial
discrimination claim under H.R.S. § 378-2 because they have
articulated a legitimate, nondiscriminatory and non-pretextual

reason for their alleged decision to terminate Plaintiff.

Shoppe, 94 Haw. 368, 379.

## II.  H.R.S. § 378-2 Claim for Discriminatory Termination Based on Age

In the Complaint, Plaintiff alleges that he was
constructively terminated from employment because of his age, in
violation of H.R.S. § 378-2.  See Complaint at 7.  However,
Plaintiff's concise statement contains no facts regarding
Plaintiff's age.  Plaintiff's Opposition contains no allegations
regarding Plaintiff's age or any age discrimination.  See, e.g.,
Opposition at 19-20 (alleging employment discrimination on the
basis of race, because Plaintiff is Asian-American); id. at 23
(referring to alleged "evidence of more favorable treatment for
non-minority employees").  Thus, Plaintiff has not established
that he is a member of a protected class with respect to age.
For this reason and for all of the same reasons that apply to
Plaintiff's racial discrimination claim (including Plaintiff's
failure to establish constructive discharge or pretext), the
Court grants summary judgment to Defendants on the age
discrimination claim under H.R.S. § 378-2.

## III. H.R.S. § 378-2 Claim for Failure to Promote

In the Complaint, Plaintiff alleges as part of his
discrimination claim under H.R.S. § 378-2 that he was denied
promotions because of his race and age.  See Complaint at 7.
Plaintiff's Opposition and concise statement do not mention a

21

failure to promote or any corresponding facts and do not oppose
summary judgment on any claim of failure to promote.

Summary judgment is appropriate for Defendants on
Plaintiff's claim for failure to promote under H.R.S. § 378-2
because Plaintiff failed to exhaust his administrative remedies
for this claim. See French v. Hawaii Pizza Hut, Inc., 99 P.3d
1046, 1059, 105 Haw. 462, 475 (Haw. 2004) (finding summary
judgment appropriate where plaintiff failed to exhaust
administrative remedies for claim brought). Plaintiff's Charge
of Discrimination form filed with the Hawaii Civil Rights
Commission ("HCRC") describes constructive discharge and
termination, but makes no allegations regarding promotion(s).
See Def. Concise St., Ex. M. Plaintiff has submitted no evidence
(or made any argument) that he raised a claim for failure to
promote before the HCRC. Thus, Plaintiff is precluded from
bringing a claim for failure to promote before this court. See
French, 105 Haw. at 477; see also H.R.S. §§ 368-11 (complaint
against wrongful discrimination), 368-12 (notice of right to
sue), and 378-4 (enforcement jurisdiction).

Alternatively, even if a failure to promote claim is
not precluded, such a claim fails because: (1) Plaintiff has not
established a prima facie case because Plaintiff has not produced
evidence that he ever applied for or was denied a promotion; and
(2) Plaintiff has not offered evidence demonstrating that a

22

discriminatory reason more likely than not motivated a decision

by the Defendants not to promote him.  See Dominguez-Curry v.

Nevada Transportation Department, 424 F.3d 1027, 1037 (9th Cir.

2005).[9/]  Accordingly, the Court grants summary judgment to

Defendants on Plaintiff's failure to promote claim under H.R.S. §

378-2.

## IV.  Promissory Estoppel Claim

Plaintiff alleges that he received express assurances

that he would not be disciplined as a result of the visitation

log investigation and seeks to have this Court enforce those

promises pursuant to the doctrine of promissory estoppel.  See

Opposition at 24-25; Complaint at 8-9.  Defendants argue that no

such promises were made to Plaintiff.  See Motion at 29-31.

A claim for promissory estoppel requires proof of the

following: (1) a promise; (2) proof that the promiser, at the

time he made the promise, foresaw that the promisee would rely

---

[9/] In a disparate treatment claim for failure to promote, a
plaintiff may respond to a summary judgment motion by either: (1)
producing evidence that a discriminatory reason more likely than
not motivated the defendant's decision or (2) establishing a
prima facie case under the burden shifting framework of McDonnell
Douglas.  See Dominguez-Curry v. Nevada Transportation
Department, 424 F.3d at 1037 (claim brought pursuant to Title
VII).  To establish a prima facie case, a plaintiff must show
that (1) he belongs to a protected class; (2) he applied for and
was qualified for the position he was denied; (3) he was rejected
despite his qualifications; and (4) the employer filled the
position with an employee not of plaintiff's class, or continued
to consider other applicants whose qualifications were comparable
to plaintiff's after rejecting plaintiff.  Id.

upon the promise; (3) actual reliance by the promisee on the promise; and (4) a showing that enforcement of the promise is necessary to avoid injustice.  In re Herrick, 922 P.2d 942, 950-951, 82 Haw. 329, 337-338 (Haw. 1996).  A "promise" is defined as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."  Id., 82 Haw. at 338 (citing Restatement (Second) of Contracts § 2(1)); see also Kahale v. ADT Automotive Services, Inc., 2 F. Supp. 2d 1295, 1301 (D. Haw. 1998) (for promissory estoppel to apply under Hawaii law, the promise must be a "clear and definite promise").

Plaintiff identifies four statements that he alleges were "promises" that the log issue would be resolved in his favor.  First, Plaintiff cites an email from Bruce Kramer (Prudential's Regional Officer) to John Van Scholten (the Branch Manager) on January 16, 2003 stating in part: "Please tell Brian we are working on his behalf."  See Pl. Concise St., Ex. 10. This statement was not a promise that the log issue would be resolved in Plaintiff's favor; if it was even a promise at all, it was only a promise that Mr. Kramer and others were working on Plaintiff's behalf – not that the final resolution would be one way or another.

Second, Plaintiff cites an email from Mr. Van Scholten to Plaintiff on January 16, 2003 stating: "I talked with Bruce"

and "He is working with Joe Dicandio to resolve this issue as quickly as possible." See Pl. Concise St., Ex. 10.  Again, this statement was not a promise that the log issue would be resolved in Plaintiff's favor; if it was even a promise at all, it was only a promise that Mr. Kramer and Mr. Dicandio were working to resolve the log issue quickly.

Third, Plaintiff cites an email from Mr. Kramer to Mr. Van Scholten on February 5, 2003 stating that he had spoken with Plaintiff and "I assured him that I would persue [sic] a resolution to this issue that would put it behind us so that Brian could focus on his success as an FA.  I can't guarantee anything yet . . . ." See Pl. Concise St., Ex. 13.  Once again, this statement did not convey a promise that Plaintiff would not be disciplined for the log falsification.  Mr. Kramer stated that he assured Plaintiff that he would pursue a resolution of the issue, but Mr. Kramer did not indicate that he promised Plaintiff any particular result.

Fourth, Plaintiff stated that Michael Carroll (Prudential's Divisional Officer for the Western Division) told Plaintiff: "Don't worry about it; we need to take care of good managers like you." See Nakashima Depo. at 184-185.  Although this statement is telling Plaintiff not to worry, it is not making any commitment that Plaintiff would not be disciplined.

Taken either individually or collectively, these statements do not manifest an intention to refrain from disciplining Plaintiff, such that Plaintiff would be justified in understanding that a commitment had been made that he would not be disciplined.[10/] See In re Herrick, 82 Haw. at 338. In short, no "promise" was made to Plaintiff that he would not be disciplined.[11/] Accordingly, the Court grants summary judgment to Defendants on the promissory estoppel claim.[12/]

## V.   Unpaid Wages Claim[13/]

Plaintiff does not contest Defendants' allegation that the award programs under which Plaintiff seeks unpaid wages state that Plaintiff is not entitled to the awards if he either

---

[10/] The Court notes that Plaintiff has acknowledged that he heard a rumor in January 2003 that he was going to be fired. See Nakashima Depo. 2003; see also, supra, footnote 7.

[11/] The Court need not reach Plaintiff's argument that he relied on the alleged promises because the Court has found that no promises were made. See Opposition at 25 (arguing that because he did not think he would be fired, Plaintiff did not get his accounts in order to be able to take his clients with him to another firm); see also Nakashima Depo at 112-113.

[12/] The Court need not reach the issue of whether the alleged promises were in contradiction of public policy here because the Court has found that no promise was made to Plaintiff. See Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd., 100 Haw. 149, 165, 58 P.3d 1196, 1212 (Haw. 2002) (refusing to "enforce promises that are against public policy").

[13/] The Complaint contains an "unpaid wages claim," alleging that Defendants' conduct "violates Hawaii's Unpaid Wage Statute, H.R.S. §§ 388-10 and 11." See Complaint at 9. These sections are the penalty and remedy provisions of Chapter 388 of the Hawaii Revised Statutes.

voluntarily resigned or was terminated for cause.  See Motion at 32; Opposition at 26; Def. Concise St. at ¶ 23.[14/]  Rather, Plaintiff argues that summary judgment should not be granted to Defendant on his claim for unpaid wages "because he did not resign voluntarily and he was not discharged for cause."  See Opposition at 26.  However, this Court has found that Plaintiff voluntarily resigned from employment.  See, supra, § I.A. Therefore, Plaintiff's argument fails and the Court grants summary judgment to Defendants on this claim.

## VI.  Breach of Deferred Compensation Contract Claim

Plaintiff alleges that Defendants promised to continue providing deferred compensation to him for seven years after he became Branch Manager.  See Complaint at 8.  Plaintiff alleges that this promise for deferred compensation was an essential part of the consideration for Plaintiff to assume the Branch Manager position and that Defendants materially breached this promise. Id.  Defendants do not dispute that this promise was made to Plaintiff; however, Defendants argue that Plaintiff was not entitled to the compensation if he voluntarily resigned from

---

[14/] Because Plaintiff does not challenge the forfeiture clauses contained in the awards programs, the Court need not address Defendants' arguments regarding the validity of those clauses or the choice of law applicable to those clauses.  See Opposition at 23-24 (arguing that Plaintiff did not resign voluntarily; citing an article about an arbitrator's finding that a Prudential employee was terminated without cause).  See also, infra, footnote 2.

employment.  See Motion at 27-29; Reply at 32; Def. Concise St.,
Exhibits D at 2, E at 13, F at 13 and 16, G at 14, H at 14-15, I
at 6, J at 20-21, K at 2.

        As discussed in section V above, Plaintiff does not
dispute that the award programs under which Plaintiff was
allegedly promised deferred compensation state that Plaintiff is
not entitled to the awards if he either voluntarily resigned or
was terminated for cause.[15/]  Because this Court has already

_____

    [15/] At the hearing, Plaintiff's counsel argued that
Defendants had not properly authenticated all of the compensation
program exhibits (Def. Concise St., Exhibits G, H, I, J, and K),
but did not dispute that pursuant to the terms contained in those
documents, Plaintiff would relinquish all deferred compensation
upon voluntary resignation.  Plaintiff's counsel argued that
because of the improper authentication, Defendants have not
introduced evidence that Plaintiff automatically forfeited the
deferred compensation upon resignation.  At the request of the
Court, subsequent to the hearing Defendants submitted a copy of
Plaintiff's Response to Defendants' Third Request for Admissions.
In that Response, Plaintiff admits that each of the compensation
program documents submitted by Defendants (at Def. Concise St.,
Exhibits D through K) are true and correct copies of the program
documents that Plaintiff received.  In light of these admissions,
the Court finds that the documents are properly authenticated for
purposes of the motion for summary judgment.
    Plaintiff has not submitted any contradictory evidence to
indicate that he would be entitled to the deferred compensation
awards if he voluntarily resigned.  Accordingly, the Court finds
that Plaintiff has not raised a genuine issue of material fact on
this issue and that the deferred compensation programs in which
Plaintiff was allegedly promised participation called for
forfeiture upon voluntary resignation.  If Plaintiff can point to
evidence to the contrary (i.e., evidence that voluntary
resignation would not result in forfeiture), Plaintiff may bring
such evidence to the Court's attention in a motion for
reconsideration.

determined that Plaintiff voluntarily resigned from employment,[16/] Defendants are entitled to summary judgment on the breach of contract claim.[17/]

## VII. Claims against Wachovia

In its Reply, Defendants argue that Wachovia is entitled to summary judgment on all claims of discrimination because: (1) Wachovia was not named in the charge of discrimination filed with the HCRC and (2) Wachovia was not Plaintiff's employer. See Reply at 13. Plaintiff has presented evidence indicating that Prudential merged with Wachovia at some point in time and thus the entity for which he worked may have been a subsidiary of Wachovia. See, e.g., Pl. Concise St. at ¶ 23. While Plaintiff may have raised an issue of fact as to these issues, it is not a genuine issue of material fact that would preclude summary judgment against Wachovia because the Court has already determined that, for independent reasons, all Defendants are entitled to summary judgment on all claims.

---

[16/] See, supra, § I.A.

[17/] The Court need not reach the issue of whether the breach of contract claim is barred by the Statute of Frauds and/or Statute of Limitations because the Court has already found that Plaintiff voluntarily resigned from employment.

## VIII. Rule 56(f) Motion for Continuance

In a footnote in his Opposition, Plaintiff moves for a continuance pursuant to Fed. R. Civ. P. 56(f) ("Rule 56(f)") so that Plaintiff may seek discovery regarding "the treatment of Branch Managers and FAs nationwide who may have engaged in misconduct" and "reports of branch audits of other branches so that Plaintiff can determine whether other branch managers accused of recordkeeping violations have been treated differently." See Opposition at 23, n.7.

Rule 56(f) permits the Court to order a continuance to permit a party to conduct depositions and discovery where that party has submitted a sworn statement demonstrating his need to conduct further discovery in order to oppose a motion for summary judgment. See Fed. R. Civ. P. 56(f). Specifically, Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The party seeking discovery must demonstrate "why discovery is warranted" and "bears the burden of showing what specific facts it hopes to discover that will raise an issue of material fact." See Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 842 (9th Cir. 2002); Harris v. Duty Free

Shoppers Ltd. Partnership, 940 F.2d 1272, 1276 (9th Cir. 1991).[18/]

Plaintiff has not demonstrated that further discovery on these issues is warranted. Magistrate Judge Kurren previously ruled that Plaintiff was not entitled to the specific discovery that he now seeks in the Rule 56(f) request. See Minute Order (Nov. 15, 2005); see also Letter from Jerry M. Hiatt to Magistrate Judge Barry M. Kurren (Oct. 18, 2005). Plaintiff failed to pursue reconsideration or appeal of Judge Kurren's ruling. Instead, Plaintiff chose not to file objections to Judge Kurren's ruling or a formal request to compel; nor did Plaintiff appeal Judge Kurren's November 15, 2005 order to the district court judge. In light of Plaintiff's failure to pursue the available remedies when he was denied the discovery, the Court finds that Plaintiff has not demonstrated that his cursory, eleventh hour Rule 56(f) request is now warranted.[19/]

---

[18/] Plaintiff has not submitted an affidavit stating the reasons why Plaintiff has been unable to obtain the essential facts or how those facts will raise an issue of material fact, as required by Rule 56(f). Plaintiff has failed to justify a continuance on this basis alone. Nonetheless, the Court examines the merits of Plaintiff's Rule 56(f) request.

[19/] Moreover, the Court has found that Plaintiff voluntarily terminated his employment and was not constructively discharged. Plaintiff's claims under H.R.S. § 378-2, for breach of contract, and for unpaid wages fail on this basis alone. The discovery Plaintiff seeks cannot raise a genuine issue of material fact on the issue of constructive discharge because Plaintiff was unaware of the treatment of other branch managers and financial advisors when he resigned, so their treatment could not have created or contributed to intolerable working conditions.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment on all claims.


IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, _____ DEC 1 4 2005 _____ .


_____
United States District Judge


Nakashima v. Prudential Equity Group, et al., Civ. No. 04-00337 ACK/BMK, ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.